The majority states that "[t]he only evidence that the State presented at trial to show that the appellant had exertedunauthorized control over Ms. Speaks's money was the hearsay testimony of Mr. Motley." (Emphasis added.) That statement presumably refers to Mr. Motley's testimony that Ms. Speaks told him that the appellant "was not handling [Ms. Speaks's] money correctly and that [the appellant] was taking some of [Ms. Speaks's] money."
I dissent. The issue is not what the appellant did with the money in the joint account after the joint account was established (for the appellant was then ostensibly a joint owner of the account), but whether the appellant wrongfullyobtained her status as a joint owner of the account in the first place. See Gainer v. State, 553 So.2d 673, 682
(Ala.Cr.App. 1989).
By signing a signature/account agreement with the bank, each signatory to a joint bank account gives his apparent consent to the other signatory's control over the funds in the account.Gainer, 553 So.2d at 679. Therefore, as the majority recognizes, the general rule is that "a joint owner of property cannot be convicted of the theft of that property." (QuotingGainer, 553 So.2d at 681.) Although the majority gives lip service to the general rule, it refers to the funds in the joint account as "Ms. Speaks's money." Because the appellant was a joint owner of the funds, it is incorrect to refer to those funds, once the account was established, as "Ms. Speaks's money."
The funds were Ms. Speaks's and the appellant was guilty of theft only if the appellant wrongfully obtained her status as a cosignatory on the joint account. Gainer, 553 So.2d at 682 ("[a]ccordingly, we hold that in a criminal prosecution for theft, where the evidence supports an inference that the defendant wrongfully obtained control over a bank account, the question of whether the defendant is actually a joint owner of the account is a question for the jury") (emphasis in original).
In Gainer, the State proved that at the time the joint bankaccount was established, the victim was mentally incompetent, the defendant knew of the victim's incompetence, and the defendant used that knowledge to gain control over the victim's finances. This Court held that "mental deficiency on the part of the victim, which is known or should be known to the defendant, can render ineffective the apparent consent by that victim in *Page 531 
a prosecution for theft." Gainer, 553 So.2d at 679.
In contrast to the Gainer prosecution, the State in this case presented no evidence that Ms. Speaks was mentally incompetent when the joint account was established, that the appellant was aware of any mental deficiency on Ms. Speaks's part, or that the appellant used that awareness to convince Ms. Speaks to set up a joint bank account with her.
In Gainer, the victim was deceased at the time of trial. The State relied on circumstantial evidence to prove that the accused had ingratiated herself with the victim, had preyed on the victim to agree to set up a joint bank account, and then had taken advantage of the situation by purchasing luxury items for herself.
Here, the appellant is Ms. Speaks's sister-in-law, with whom Ms. Speaks came to live. Ms. Speaks testified at trial that she "g[a]ve [$9,000 in the joint account] to [the appellant. The appellant] didn't ask for it." R. 31. Ms. Speaks testified that the appellant had "been so good to [her]" R. 30, had "fixed [her] meals" and had "helped [her] clean up and everything." R. 30. The appellant used $9,000 from the joint account to replace carpets, furniture, and clothing that Ms. Speaks had "messed up." R. 94.
Although the State presented hearsay testimony that Ms. Speaks did not approve of the appellant's use of the money in the joint account, the State presented no evidence that the appellant gained access to that account in the first place by means of any deficiency in Ms. Speaks's mental acumen. CompareUnited States v. Hill, 835 F.2d 759, 762 (10th Cir. 1987) (wherein the court, reversing a theft conviction, observed that "[t]he only evidence of criminality is the circumstantial evidence devolving from the conduct of Mr. Hill after he acquired possession of the property") (emphasis in original).
In this case, unlike Gainer, the State did not prove that Ms. Speaks was mentally deficient, that the appellant knew of that deficiency, and that the appellant used that knowledge to gain control over Ms. Speaks's finances.
In my judgment, the appellant's conviction is due to be reversed and a judgment of acquittal rendered in her favor.